IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO RAMÍREZ FERRER

Plaintiff

v.                                              CIVIL NO. 98-2037(JAG)

SONY PUERTO RICO

Defendant

---

## REPORT AND RECOMMENDATION

Plaintiff Roberto Ramírez-Ferrer (hereinafter "Ramírez") filed the present lawsuit on September 8, 1998, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, against his former employer, Sony Puerto Rico, Inc. (hereinafter "Sony"). See Docket No. 1. Specifically, plaintiff alleges that he was discharged illegally because of his national origin and political beliefs. Ramírez's claim of employment discrimination based on political affiliation is a supplemental claim under Law 100, P.R. Laws Ann. tit. 29, § 146.[1]

Defendant Sony filed a Motion for Summary Judgment on May 15, 2000 (Docket No. 17). On June 19, 2000, plaintiff opposed the summary judgment motion (Docket No. 20). Thereafter, defendant filed a sur-reply (Docket No. 25). The matter was referred for report and recommendation on July 5, 2001 (Docket No. 32).

## SUMMARY JUDGMENT STANDARD

Rule 56(c), of the Federal Rules of Civil Procedure, sets forth the standard for ruling on

---

[1] In his motion plaintiff often intermingles his national origin claim with his state law claim for discrimination based on political beliefs. The court will not address the claim based on political beliefs given plaintiff's complete failure to allege the same in a cohesive and comprehensive manner, and the fact that it is entirely based on the unsubstantiated allegation that the attitude of Sony's president towards him changed during the time of the 1996 electoral campaign, given Ramírez's obvious support of the NPP.

CIVIL NO. 98-2037 (JAG)                                2

summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The critical question is whether a genuine issue of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonado Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. See Springfield Terminal Ry. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997). Nonetheless, the court is free to "ignore 'conclusory allegations, improbable inferences and unsupported speculation.'" Súarez v. Pueblo International, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

In order to aid the court in the daunting task of searching for genuine issues of material fact in the record, this District adopted Local Rule 311.12. See, e.g., Corrada Betances v. Sea-Land Service, Inc., 248 F.3d 40, 43-44 (1st Cir. 2001); Morales v. Orssleff's EFTE, 246 F.3d 32, 33-35 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000). Jurisprudence from this District Court stresses that the parties must adhere strictly to the directives set forth in Local Rule 311.12.[2] See Ruiz v. Caribbean Restaurants, Inc., 54 F.Supp.2d 97, 102 (D.P.R. 1999); Dominguez v. Eli Lilly & Co., 958 F.Supp. 721, 727 (D.P.R. 1997); Rivera de Torres v. Telefónica de Puerto

---

[2] In the case at bar both parties submitted the requisite 311.12 statement. Plaintiff's statement contains erroneous references to the record, while defendant's statement contains several irrelevant and immaterial facts. Nonetheless, given that both parties have complied with the essence of the Local Rule, the Court will distill the relevant facts of the case from the somewhat defective 311.12 statements submitted by the parties.

CIVIL NO. 98-2037 (JAG)                               3

Rico, 913 F.Supp. 81 (D.P.R. 1995). See also Rivera Velez v. Puerto Rico Electric Power Authority, __ F. Supp. 2d __, 2001 WL 1327104 (D.P.R. 2001) (discussing at length the purpose of Rule 311.12).

As mandated by the aforementioned summary judgment standard, the relevant facts viewed in the light most favorable to plaintiff Ramírez are set forth below.

## FACTUAL BACKGROUND

Plaintiff Ramírez, who was born in New Jersey and is of Puerto Rican descent, began working for Sony in April of 1992, as a Dealer Support Coordinator. In 1993, Ramírez was promoted to the position of Sales Manager for the Caribbean Division. See Docket No. 17, Exhibit 6, pp. 31-35. As Sales Manager for the Caribbean Division, Ramírez was responsible for the markets of the Dominican Republic, the Lesser Antilles, Belize and Guyana. See Docket No. 20, Exhibit 1, Ramírez's deposition, p. 32. In April of 1994 Ramírez received a positive performance evaluation as a result of his work at Sony. See Docket No. 20, Exhibit 2, Sony's Performance Appraisal Form.

Sometime between May 1993 and early 1994, Hiroshi Yasuo, a Japanese native, became the president of Sony. Despite the change in the company's hierarchy, plaintiff Ramírez continued reporting to Mr. Carlos Bran, Sony's General Manager, as he had always done. See Docket No 17, Exhibit 22, p. 56. Once again, in May of 1995, Ramírez received a very positive performance evaluation. See Docket No. 20, Exhibit 4, Sony's Performance Appraisal Form. Later in 1995, as a result of Mr. Bran's resignation, Mr. Yasuo assumed the duties of General Manager in addition to his own as President. See Docket No. 17, Exhibit 23, p. 61. Thus, plaintiff Ramírez began reporting directly to Mr. Yasuo. See Docket No. 20, Exhibit I, p. 61.

According to the complaint, Ramírez's relationship with Mr. Yasuo was cordial in the beginning. In fact, in April of 1996, plaintiff received a very favorable evaluation, signed by Mr. Yasuo in his capacity as his new supervisor. See Docket No. 20, Exhibit 8, Sony's Performance Appraisal Form. It appears that the relationship between Mr. Yasuo and Ramírez began to deteriorate in the summer of 1996, when Mr. Yasuo expressed his concern about the contents of

CIVIL NO. 98-2037 (JAG)                                    4

Ramirez's sales report, specifically, the "flash report" of May 1996. See Docket No. 17, Exhibit 26, p. 62; Exhibit 28, p. 64.

On December 24, 1996, Mr. Yauso and Mr. Ramírez met to discuss Ramírez's alleged interest in a vacant position in the company's Puerto Rico division. Specifically, Mr. Yauso offered Ramírez the position of Senior Account Executive of the Puerto Rico National Accounts, reporting to the Puerto Rico Division Sales Manager, with a compensation of $45,000.[3] See Docket No. 17, Exhibit 70, pp. 26-28; Exhibit 71. Ramírez did not accept Yasuo's offer given that he viewed the same as a demotion. See Docket No. 20, Exhibit 7, pp. 9-11. A few days after the meeting, on December 26, Mr. Yasuo sent a memo to plaintiff on December 26, 1996, stating his dissatisfaction with plaintiff's job performance as Sales Manager of the Caribbean, and granting plaintiff three (3) months to prepare an action plan and improve sales. See Docket No. 17, Exhibit 71; Docket No. 20, Exhibit 9.

The chronology of the "memo war" that ensued between Mr. Yasuo and Ramírez is difficult to re-create because of the convoluted and mismarked exhibits in the record. However, it is undisputed that Ramírez indeed submitted an action plan and a list of conditions which he understood Sony should meet in order for his plan to be effective. See Docket No. 20, Exhibits 11, 12 and 13. Attached to his action plan, Ramírez included a "cover sheet" stating: "upon return of the signed agreement, I will immediately proceed to implement." See Docket No. 17, Exhibit 82. Mr. Yasuo made a hand-written note on the top right-hand side of the last page of Ramírez' action plan which read: "I totally don't like this form. I am not in the position of having to sign. You are in the position of having to sign for your commitments." See Docket No. 17, Exhibit 82, pg. 3.

Thereafter, Mr. Yasuo and Ramírez continued exchanging short memos, until plaintiff's discharge. A letter signed by Mr. Yasuo on January 31, 1997, was delivered to Ramírez on February 4, by Ms. Carmen M. Navarro, Human Resources Manager. See Docket No. 20, Exhibit 6, pp. 38-40; Docket 17, Exhibit 105. Ms. Navarro told plaintiff that he had been fired for insubordination.

---

[3] This salary was comparable to the one which plaintiff received as Sales Manager of the Caribbean position. See Docket No. 17, Exhibit 71.

CIVIL NO. 98-2037 (JAG)                              5

### TITLE VII: NATIONAL ORIGIN DISCRIMINATION

Title VII prohibits employers from discriminating on the basis of "race, color, religion, sex, or national origin." Civil Rights Act of 1964, § 703(a), 42 U.S.C. § 2000e-2 (a). Given that there is no direct evidence of discrimination[4] in this case, the Court needs to apply the familiar three-stage burden-shifting framework commonly known as the McDonnell Douglas test. See Mc Donell Douglas Corp v. Green, 411 U.S. 792 (1973); Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 429 (1st Cir. 2000); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996). "Under this framework, ... plaintiff [Ramírez] shoulders the initial burden of adducing a prima facie case of unlawful discrimination. This induces a showing that: (1) [Ramírez] is a member of a protected class; (2) [Sony] took an adverse employment action against him; (3) [Ramírez] was qualified for the employment he held; and (4) Ramírez's position remained open or was filled by a person whose qualifications were similar to his." Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999).

Contrary to defendant Sony's assertions, this Court finds that plaintiff Ramírez adduced enough evidence to set forth a *prima facie case* of national origin discrimination. Ramírez is a member of a protected class[5]; he was fired by defendant Sony; the record shows that he was

---

[4] Stray remarks, like the ones allegedly made by Mr. Yasuo, are not considered to be direct evidence of discrimination, when as here, the remarks are "unrelated to the decisional process itself." See Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir. 1996).

[5] Ramírez, who is of Puerto Rican background (a recognized protected class in the context of national origin discrimination), see Castro Franceschi v. Hyatt, 782 F. Supp 712, 719 (D.P.R. 1992), insists in defining his protected class status as that of an "American citizen." Even though "citizenship" is not a recognized category for purposes of Title VII, the Court is willing to allow Ramírez to classify himself as an "American" for purposes of this motion because: (1) the defendant has not challenged the same; and, (2) there are cases in which Americans have successfully brought national origin discrimination suits. See, e.g., Preda v. Nissho Iwai Am. Corp., 128 F.3d 789, 791 (2nd Cir. 1997). see also Dimarco-Zappa v. Cabanillas, 238 F.3d 25 (1st Cir. 2001)(citing Earnhardt v. Commonwealth of Puerto Rico, 582 F.Supp. 25 (D.P.R. 1983)).

CIVIL NO. 98-2037 (JAG)                                    6

qualified for the position of Sales Manager of the Caribbean Region as evidenced by his Appraisal Performance Reports[6]; and, he was replaced by Mr. Crescencio Padillas.

Once the plaintiff establishes a *prima facia case*, the burden of production shifts to the defendant to produce a valid non-discriminatory reason for the adverse employment action. See Guillermety Mendez v. Puerto Rican Cement Co., Inc., 56 F.Supp.2d 176, 180 (D.P.R. 1999)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). Defendant Sony asserts that Ramírez was fired because of his "entrenched resistance to follow Mr. Yasuo's instructions." In fact, the record shows that Ms. Navarro, the Human Resources Manager, told plaintiff that he had been fired for insubordination. Plaintiff admits that his relationship with Mr. Yasuo began to deteriorate after May of 1996 due to Yasuo's concern and dissatisfaction with Ramírez's sales reports.[7] Indeed, the relationship between Mr. Yasuo and Ramírez deteriorated to the point that both men engaged in a "memo war," in which they began demanding things from one another, right up until Mr. Ramírez's discharge early in 1997. It is uncontested that Sony has articulated a non-discriminatory reason for Ramírez's discharge, namely, that he refused to follow his supervisor's directives in relation to the monthly sales report, to the point of insubordination.

The Court therefore turns to the final step of the McDonnell Douglas framework, to wit, whether the reason proffered by the defendant was "a coverup" for a "discriminatory decision." McDonnell Douglas, 411 U.S. at 805. At this stage of the analysis "the burden devolves upon the plaintiff to prove that the reason advanced by the defendant-employer constitute mere pretext for unlawful discrimination. . . .To meet this burden, the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was plaintiff's . . . national

---

[6] "[E]vidence of increased responsibility over time, positive feedback and pay increase–even if it does not extend right up to the time of discharge–satisfies the 'qualified' element of plaintiff's *prima facie case.*" Falero Santiago v. Stryker Corp., 10 F.Supp.2d 93, 96 (D.P.R. 1998)(citations omitted).

[7] The record shows that even in the favorable evaluation that Yasuo wrote of Ramirez's work in April of 1996, there was a note stating that "more accurate market analysis is requested." See Docket No. 20, Exhibit 8.

**CIVIL NO. 98-2037 (JAG)**                                      7

origin." Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d at 19 (citations omitted). Ramírez, therefore, "must produce evidence that: (1) [Sony's] articulated reason for laying [him] off ... [was] a pretext; and (2) the true reason [was] discriminatory animus." Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 6 (1st Cir. 2000)(citing Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999), cert denied, U.S. 1161 (2000)).

In an effort to demonstrate that Sony's stated reason for his dismissal was a pretext for discrimination, plaintiff Ramírez recounts "a tale of discriminatory comments, pretextual business decisions, and favoritism." See Mulero-Rodriguez v. Ponte, Inc., 98 F.3d at 674. Plaintiff (through his own deposition and a sworn statement by a former Sony employee) makes reference to Mr. Yasuo's unbecoming behavior and statements during his tenure as president of Sony. For example, at a business meeting at the Caribe Hilton, illustrations were used during a presentation representing the Japanese staff in coats and ties while the non-Japanese employees were depicted as "the Flintstones". See Docket No. 20, Exhibit 5. In addition, Mr. Yasuo made comments to Ramírez such as, "American tourists are cheap," and "American workers lack the loyalty, commitment, focus and integrity that Japanese workers have". (See Docket No. 20, Exhibit 1, pg. 116-117. Ramírez also claims that Yasuo's relations with Sony's customers in the Caribbean Islands (most of which were either of African or Hindu descent) were difficult due to the fact that he was rude and disrespectful while conducting business. See Docket No. 20, Exhibit 5, Exhibit 6, pg. 48-49. Plaintiff further asserts that the fact that Mr. Yasuo often spoke Japanese during the monthly staff meetings with other Japanese staff members is evidence of discriminatory animus.[8] See Docket No 20, Exhibit 1.

Plaintiff makes other general statements about Mr. Yasuo and defendant Sony, in and effort to establish discriminatory animus, these are: (1) that Mr. Yasuo had all his personal care products shipped directly from Japan (see Docket No. 20, Exhibit 5); (2) that Japanese and Oriental

---

[8]    Defendant contends that Mr. Yasuo sometimes spoke Japanese during the meetings with some of his colleagues because of his very limited ability to speak English. However, all of the Company's business, including the meetings, were conducted in English.

CIVIL NO. 98-2037 (JAG)                                         8

managers received better salaries and benefits than other managers (see Docket No. 20, Exhibit 1, 102-104); (3) that Yasuo monitored plaintiff Ramírez's work more closely than the work of other managers (see Docket No. 20, Exhibit 1, pg 86-91; Exhibit 5); (4) that Yasuo required plaintiff to chauffeur him around every time they had to attend to Caribbean visitors (see Docket No. 20, Exhibit 1, 98-99, Exhibit 5); (5) that Seiichi Ebina, Sony's service manager, treated plaintiff in a different manner than he treated fellow Japanese Hidefumi Tsukazaki and Minoru Kobayashi (see Docket No. 20, Exhibit 7); (6) that plaintiff was not provided with DMAS software, a very important sales management tool which every other manager had at their disposal (see Docket No. 20, Exhibit 7, p. 95-99); and, (7) that Yasuo was transferred out of Puerto Rico sometime in March of 1997, given that he was the object of another discrimination lawsuit in state court (see Docket No. 20, Exhibit 3, pg. 5, answer 10 b).

Few of the many allegations and complaints that Ramírez has regarding Mr. Yasuo's behavior are even remotely related to Ramírez's employment at Sony. The fact that Mr. Yasuo had his personal care products shipped form Japan; that he was rude to customers of apparently all races and backgrounds; and, that he believed "American tourists to be cheap" is of absolutely no relevance to Mr. Yasuo's alleged discriminatory animus relative to his decision to fire Ramírez. Plaintiff has failed to set forth any circumstantial evidence to support the allegation that the real reason for his discharge was his national origin. For example, the record lacks statistical evidence showing disparate treatment by Sony of members of the protected class, evidence of any kind of differential treatment by the employer of Mr. Ramírez in the workplace[9], or evidence that Ramírez was replaced by someone outside of the protected class.[10] See, e.g., Guillermety Mendez v. Puerto

---

[9] Ramírez did include conclusory statements in his opposition to defendant's summary judgment motion relative to the fact that he was allegedly treated differently than other employees. However, he failed to "at least specify the differential treatment he received so that the court [could] assess the evidence of discrimination." Guillermety Mendez v. Puerto Rican Cement Co., Inc., 54 F.Supp.2d at 183.

[10] This, of course, would be very difficult for plaintiff to prove given that: (1) there is no evidence on the record that any other Puerto Rican employee was discharged; (2) plaintiff's

CIVIL NO. 98-2037 (JAG)                                    9

Rican Cement Co., Inc., 54 F.Supp.2d at 181.

The only circumstantial evidence that has been presented by plaintiff is the sporadic and general comments made by Yasuo denigrating those in the protected class, namely "Americans". Even though these comments are admittedly rude, "occasional or sporadic instances of the use of racial or ethnic slurs in an of themselves do not constitute acts of . . .[national origin] discrimination". See Robinson v. Mongomery Ward & Co., 823 F.2d 793, 797 (4th Cir. 1987). See also Pagano v. Frank, 983 F.2d 343, 349 (1st Cir. 1993).

The one thing that this Court can adduce from the circumstantial evidence provided by plaintiff Ramírez, is that cultural differences between Mr. Yasuo and plaintiff curtailed their ability to communicate, and caused a series of personality conflicts which ultimately resulted in plaintiff's dismissal. "Title VII does not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of [supervisors], unless the facts and circumstances indicate that discriminatory animus was the reason for the decision. . . .Courts may not sit as super personnel departments, assessing the merits–or even the rationality–of employer's nondiscriminatory decisions." Falero Santiago v. Stryker Corp., 10 F.Supp.2d 93, 98 (D.P.R. 1998)(citing Smith v. Stratus Computer, 40 F.3d 11, 16 (1st Cir. 1994); Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir. 1991)). Because there is no evidence in this record from which a jury could properly find that Sony discriminated against Ramírez on the basis of his national origin, plaintiff's Title VII claim warrants dismissal.

## CONCLUSION

In view of the aforementioned discussion, this Court **RECOMMENDS** that defendant Sony's Motion for Summary Judgment (Docket No. 17) be **GRANTED**. Plaintiff Ramírez's national origin discrimination claim under Title VII should be **DISMISSED**, and his supplemental

---

replacement was Puerto Rican, and thus "American"; and, (3) all the other Puerto Rican employees at Sony are also Americans (thus falling automatically under plaintiff's choice of "protected class"), and there is not a scintilla of evidence showing that any of them were treated differently than the "non-American" employees.

CIVIL NO. 98-2037 (JAG)                             10

claim under Law 100 should be **DISMISSED WITHOUT PREJUDICE.**.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch v. Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 16th day of November, 2001.

GUSTAVO A. GELPI
United States Magistrate-Judge