IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ROBERTO RAMIREZ-FERRER

    Plaintiff

    v.                                          CIVIL NO. 98-2037 (JAG)

SONY PUERTO RICO, INC.

    Defendant

---

**OPINION AND ORDER**

Pending before the Court is plaintiff Roberto Ramirez-Ferrer's ("Ramirez") objections to United States Magistrate Judge Gustavo Gelpí's Report and Recommendation on defendant Sony Puerto Rico, Inc.'s ("Sony") motion for summary judgment. (Docket No. 17). Magistrate Judge Gelpí recommended the Court to **GRANT** summary judgment and **DECLINE** to exercise supplemental jurisdiction over Ramirez's state law claims. After reviewing the objections, the Court **ADOPTS** the Report and Recommendation. (Docket No. 33).

**STANDARD OF REVIEW**

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Rule 503. The losing party may contest the Report and Recommendation by filing written objections within ten days of being served with a copy of the





AO 72A
(Rev.8/82)

Report and Recommendation. The Court must then make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The Court may accept, reject or modify, in whole or in part, the magistrate's recommendations. "Failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are waived on appeal." <u>Davet v. Maccarone</u>, 973 F.2d 22, 30-31 (1st Cir.1992).

## FACTUAL BACKGROUND[1]

Plaintiff Ramirez, who was born in New Jersey and is of Puerto Rican descent, began working for Sony in April of 1992, as a Dealer Support Coordinator. In 1993, Ramirez was promoted to the position of Sales Manager for the Caribbean Division. <u>See</u> Docket No. 17, Exhibit 6, pp. 31-35. As Sales Manager for the Caribbean Division, Ramirez was responsible for the markets of the Dominican Republic, the Lesser Antilles, Belize and Guyana. <u>See</u> Docket No. 20, Exhibit 1, Ramirez's deposition, p. 32. In April of 1994 Ramirez received a positive performance evaluation as a result of his work at Sony. <u>See</u> Docket No. 20, Exhibit 2, Sony's Performance Appraisal Form.

Sometime between May 1993 and early 1994, Hiroshi Yasuo, a

---

[1] The facts are taken from the Magistrate Judge's Report and Recommendation.

2

Japanese native, became the president of Sony. Despite the change in the company's hierarchy, plaintiff Ramirez continued reporting to Mr. Carlos Bran, Sony's General Manager, as he had always done. See Docket No 17, Exhibit 22, p. 56. Once again, in May of 1995, Ramirez received a very positive performance evaluation. See Docket No. 20, Exhibit 4, Sony's Performance Appraisal Form. Later in 1995, as a result of Mr. Bran's resignation, Mr. Yasuo assumed the duties of General Manager in addition to his own as President. See Docket No. 17, Exhibit 23, p. 61. Thus, plaintiff Ramirez began reporting directly to Mr. Yasuo. See Docket No. 20, Exhibit I, p. 61.

According to the complaint, Ramirez's relationship with Mr. Yasuo was cordial in the beginning. In fact, in April of 1996, plaintiff received a very favorable evaluation, signed by Mr. Yasuo in his capacity as his new supervisor. See Docket No. 20, Exhibit 8, Sony's Performance Appraisal Form. It appears that the relationship between Mr. Yasuo and Ramirez began to deteriorate in the summer of 1996, when Mr. Yasuo expressed his concern about the contents of Ramirez' sales report, specifically, the "flash report" of May 1996. See Docket No. 17, Exhibit 26, p. 62; Exhibit 28, p. 64.

On December 24, 1996, Mr. Yasuo and Mr. Ramirez met to discuss Ramirez's alleged interest in a vacant position in the company's

3

Puerto Rico division. Specifically, Mr. Yauso offered Ramirez the position of Senior Account Executive of the Puerto Rico National Accounts, reporting to the Puerto Rico Division Sales Manager, with a compensation of $45,000 See Docket *No*. 17, Exhibit 70, pp. 26-28; Exhibit 71. Ramirez did not accept Yasuo's offer because he viewed it as a demotion. See Docket No. 20, Exhibit 7, pp. 9-11. A few days after the meeting, of December 26, 1996, Mr. Yasuo sent a memo to Ramirez stating his dissatisfaction with Ramirez's job performance as Sales Manager of the Caribbean, and granting plaintiff three (3) months to prepare an action plan and improve sales. See Docket No. 17, Exhibit 71; Docket No. 20, Exhibit 9.

The chronology of the "*memo* war" that ensued between Mr. Yasuo and Ramirez is difficult to re-create because of the convoluted and mismarked exhibits in the record. It is undisputed, however, that Ramirez indeed submitted the requested action plan and a list of conditions that he understood Sony should meet for his plan to be effective. See Docket No. 20, Exhibits 11, 12 and 13. Attached to his action plan, Ramirez included a "cover sheet" stating: "upon return of the signed agreement, I will immediately proceed to implement." See Docket No. 17, Exhibit 82. Mr. Yasuo made a hand-written note on the top right-hand side of the last page of Ramirez' action plan which

4

read: "I totally don't like this form. I am not in the position of having to sign. You are in the position of having to sign for your commitments." See Docket No. 17, Exhibit 82, pg. 3.

Thereafter, Mr. Yasuo and Ramirez continued exchanging short memos, until Ramirez' discharge. A letter signed by Mr. Yasuo on January 31, 1997, was delivered to Ramirez on February 4, by Ms. Carmen M. Navarro, Human Resources Manager See Docket No. 20, Exhibit 6, pp. 38-40; Docket 17, Exhibit 105. Ms. Navarro told Ramirez that he had been fired for insubordination.

## DISCUSSION

Title VII makes it an unlawful employment practice for an employer to discriminate against any individual based on national origin. See 42 U.S.C. §2000e-2(a).

Under Title VII a discrimination case can be established in either of two ways: first, through direct evidence of discrimination or, second, through the cumulative effect of indirect evidence of the employer's motivation. See Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 909 (1st Cir. 1988). In this case, Ramirez did not proffer direct evidence of discrimination by Sony on account of his national origin. Absent direct evidence of intentional discrimination, a Title VII plaintiff alleging disparate treatment must employ the burden-shifting-framework enunciated in McDonnell Douglas Corp. v. Green, 411

5

U.S. 792 (1973). See also Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir.1996).

Under McDonnell Douglas, Ramirez bears the initial burden of establishing a prima facie case of Title VII discrimination. See McDonnell Douglas Corp. 411 U.S. at 802. The specifications of the prima facie proof vary depending on the nature of the discrimination claim. See McDonnell Douglas Corp. 411 U.S. at 802 n. 13. In general, an employee alleging gender discrimination must first establish a prima facie case by showing that: (1) he belonged to a protected class, (2) he performed his job satisfactorily, (3) his employer took an adverse employment decision against him, and (4) his employer continued to have his duties performed by a comparably qualified person. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000). The Magistrate Judge held that Ramirez adduced enough evidence to set forth a prima facie case of national origin discrimination. The Magistrate Judge found that Ramirez is a member of a protected class, that he was fired by Sony, that the record shows that he was qualified for his employment and that he was replaced by Crecencio Padillas. Id.

Establishment of the prescribed prima facie case creates a presumption that the employer engaged in impermissible discrimination.

See <u>Burdine</u>, 450 U.S. at 254. To rebut this presumption, Sony needs only to articulate a legitimate nondiscriminatory reason for terminating Ramirez's employment. See <u>Lawrence v. Northrop Corp.</u>, 980 F.2d 66, 69 (1st Cir. 1992). Ramirez's obligation is simply one of production. See <u>Lawrence</u>, 980 F.2d at 69. Here, the Magistrate Judge considered that Sony stated a legitimate nondiscriminatory reason. Ramirez was fired because of his "entrenched resistance to follow Mr. Yasuo's instructions." (Docket 33 at 5).

Once the employer has proffered a legitimate, nondiscriminatory reason for its adverse decision, the presumption generated by the employee's prima facie case disappears, and the burden falls back upon the employee to prove that the reason advanced by the employer for the adverse action constituted a mere pretext for unlawful discrimination based on national origin. See <u>Lawrence</u>, 980 F.2d at 69-70. <u>See also</u> <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 824-826 (1st Cir.1991). Minimally sufficient evidence of pretext does not suffice, evidence that reasonably supports a finding of discriminatory animus is required. See <u>Goldman v. First Nat. Bank of Boston</u>, 985 F.2d 1113, 1116-1118 (1st Cir. 1993). Ramirez contends that there is sufficient evidence of discriminatory motivation based on national origin in this case. (Docket 34 at 5-14.)

The Magistrate Judge considered 1) Ramirez's recounts of Mr.

7

Yasuo's unbecoming behavior and statements, pretextual business decisions, and favoritism toward non Americans, 2) Ramirez's assertions that Mr. Yasuo had all his personal care products shipped directly from Japan, and that Japanese and Oriental managers received better salaries and benefits than other managers, 3) Ramirez's arguments that Mr. Yasuo monitored Ramirez's work more closely than the work of other managers, 4) Ramirez's allegations that Yasuo required Ramirez to chauffeur him around every time they had to attend Caribbean visitors, 5) Ramirez's averments that Seiichi Ebina, Sony's service manager, treated Ramirez in a different manner than he treated fellow Japanese Hidefumi Tsukazaki and Minoru Kobayashi, and 5) Ramirez's complaints that he was not provided with DMAS software, a very important sales management tool which every other manager had at their disposal. (Docket 33 at 8).  Still, the Magistrate Judge found Ramirez's arguments wanting.  The Magistrate Judge first cited long-standing First Circuit precedent and determined that Ramirez's allegations and complaints regarding Mr. Yasuo's behavior were remotely related to Ramirez's employment at Sony.  Id.  The Magistrate Judge then held that Ramirez had not proffered any circumstantial evidence to support the allegation that the real reason for his discharge was his national origin.  Id at 9.  The Magistrate Judge observed that Ramirez omitted to muster statistical evidence showing

8

disparate treatment by Sony toward the members of the protected class, or evidence of any kind of differential treatment by Sony of Ramirez in the workplace, or evidence that Ramirez was replaced by someone outside of his protected class. Id at 8. The Magistrate Judge then noted that Ramirez only proffered conclusory statements in his opposition to Sony's motion for summary judgment "relative to the fact that he was allegedly treated differently than other employees." Id. Nevertheless, Ramirez failed to "at least specify the differential treatment he received so that the court [could] assess the evidence of discrimination." Guillermety Mendez v. Puerto Rican Cement Co., Inc., 56 F.Supp.2d 176, 183 (1999). (Docket 33 at 8).

The Magistrate Judge considered that the only circumstantial evidence proffered by Ramirez was the sporadic and general comments made by Yasuo denigrating those in the protected class, namely "Americans". Id at 9. The Magistrate Judge decided that although these comments were rude, "occasional or sporadic instances of the use of racial or ethnic slurs in and of themselves do not constitute acts of . . . [national origin] discrimination". See Robinson v. Montgomery Ward & Co., 823 F.2d 793, 797 (4th Cir. 1987). See also Pagano v. Frank, 983 F.2d 343, 349 (1st Cir. 1993). (Docket 33 at 9). The Magistrate Judge concluded that the one thing that can be inferred from the circumstantial evidence provided by Ramirez, was that

9

"cultural differences between Mr. Yasuo and [Ramirez] curtailed their ability to communicate, and caused a series of personality conflicts which ultimately resulted in plaintiff's dismissal." Id.

Finding that there was no evidence in the record from which a jury could properly find that Sony discriminated against Ramirez on the basis of his national origin, the Magistrate Judge recommended that Sony's Motion for Summary Judgment (Docket No. 17) be **GRANTED**.

Ramirez filed his Objections on December 3, 2001. (Docket No. 34). Ramirez's objections to the Magistrate Judge's Report and Recommendation are a slightly revised version of the original Plaintiff's Opposition to the Motion for Summary Judgment. Lopez v. Chater, 8 F. Supp.2d 152, 155 (D.P.R. 1998)(Domínguez, D.J.). They do not raise any material issue not adequately addressed by the Magistrate Judge in his Report. The Court will only consider the single arguably legitimate objection that Ramirez has presented. Ramirez contends that the Magistrate Judge erroneously concluded that Ramirez failed to produce evidence that he was replaced by someone outside the protected class. The Magistrate Judge stated that Ramirez was replaced by a Puerto Rican and that there was no evidence that any other Puerto Rican employee was discharged. (Docket 33 at 8, note 10). Ramirez disputes the Magistrate's contention and maintains that his claim of national origin discrimination is predicated on the fact

10

that he is a United States born American and not a Puerto Rican. (Docket No. 34 at 2.) The argument need not detain the Court for long. A review of the Magistrate Judge's opinion and the record reveals that Ramirez is mistaken.

The Magistrate Judge first pointed that Ramirez's replacement was Puerto Rican, and thus "American", and that all other Puerto Rican employees at Sony were also Americans (thus falling automatically under [Ramirez's] choice of protected class and that there was no evidence that any of them were treated differently than the non American employees. (Docket 33 at 8, note 10). Moreover, Ramirez, at all times has claimed to be an American of Puerto Rican heritage. Furthermore, there is no evidence or allegation that he was perceived differently from the other Puerto Rican Americans in the work place. Thus, the Magistrate Judge adequately addressed the issue in the report.

The Court's review leads it to concur with Magistrate Judge Gelpí's conclusion that the Motion for Summary Judgement should be granted. The Court finds there is a dearth of evidence on discriminatory animus which fully justifies <u>brevis</u> disposition. "Title VII does not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of [supervisors], unless the facts and circumstances indicate that discriminatory animus

11

was the reason for the decision.... Courts may not sit as super personnel departments, assessing the merits or even the rationality of employer's nondiscriminatory decisions." <u>Falero Santiago</u> v. <u>Stryker Corp.</u>, 10 F.Supp.2d 93, 98 (D.P.R. 1998)(citing <u>Smith</u> v. <u>Stratus Computer</u>, 40 F.3d 11, 16 (1st Cir. 1994); <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 825 (1st Cir. 1991)). Accordingly, the Court adopts the Report and Recommendation in its entirety and dismisses the Complaint.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Justo Gelpí's Report and Recommendation. Judgment shall be entered dismissing the Complaint with prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of March 2002.

_____
JAY A. GARCIA-GREGORY
United States District Judge